FLOYD R. KORTENHOF, Plaintiff-Appellant, *v.* ANDREW MESSICK *et al.*, Defendants-Appellees.

(No. 58516;

First District (5th Division)—February 8, 1974.

*Rehearing denied April 16, 1974.*

Ruben Kaplan & Lasky, of Skokie (Bernard M. Kaplan, of counsel), for appellant.

Baime and Baime, of Chicago (Joseph L. Baime, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from an order dismissing certain portions of his complaint that sought an injunction and other appropriate equitable relief enjoining and restraining defendants Andrew Messick, Aetna State Bank, William Fauber, Joseph L. Dombrowski and National Boulevard Bank of Chicago from transferring certain properties out of a land trust and barring their sale except pursuant to a judgment of foreclosure by a court of competent jurisdiction.

Plaintiff and his now deceased wife were owners in joint tenancy of the beneficial interest in eight improved parcels of Chicago real estate,

titles to which were held in trust by the National Boulevard Bank of Chicago as trustee under a trust agreement dated January 31, 1969. On September 30, 1971, they entered into a transaction with defendant Messick whereby Messick loaned them $80,000 for a term of six months. Plaintiff and his wife secured the loan by giving Messick: (1) their collateral note in the amount of $90,000 (the additional $10,000 allegedly represents Messick's fee for making the loan); and (2) assigning their certificate of beneficial interest in the land trust to him. This assignment was filed with the land trustee.

No payment was ever made by plaintiff or his wife on the collateral note and on its due date, April 1, 1972, the entire amount of the note remained unpaid.

On May 5, 1972, defendant Dombrowski mailed notice to plaintiff that he had been retained as an attorney by Messick to represent his interests regarding the loan. The letter indicated that under the assignment of the beneficial interest in the trust the rental income on the eight properties would be collected by Dombrowski's agent and turned over to Messick and that the properties would be disposed of at a private sale on May 23, 1972, in Dombrowski's office.

On the same date that notice of the intended sale was sent to the Kortenhofs, Messick directed defendant National Boulevard Bank to convey the eight properties to defendant Fauber, an employee of defendant Aetna State Bank, allegedly to hold title as Messick's nominee.

On May 22, 1972, plaintiff filed his complaint alleging, *inter alia*, that the collateral assignment of the beneficial interest did not authorize or warrant Messick's direction to the National Boulevard Bank to convey the eight properties out of the land trust to defendant Fauber and that the action constituted a wrongful and unlawful conversion. It was also alleged that a "rider" attached to the collateral assignment reserved plaintiff and his wife the right to refinance or sell any of the eight properties at certain agreed upon minimum prices to reduce the indebtedness, that by reason thereof Messick's interest is at best, if it survived the act of conversion, in the nature of and constitutes an equitable mortgage and that therefore the properties cannot be sold except pursuant to a lawful order of court. It was further alleged that the $10,000 fee was usurious, that the trust properties were valued at $324,000 while the loan was only $90,000 and that plaintiff was in the process of obtaining mortgage refinancing and/or sales of the various land parcels sufficient in amount to fully pay Messick. Plaintiff prayed for: (1) an order restraining and enjoining National Boulevard Bank[1] and Fauber from conveying the

---

[1] The prayer should perhaps be read as "Avoiding National Boulevard Bank's Conveyance" since the real estate had already been transferred to Fauber.

eight properties and a temporary and/or permanent injunction blocking the proposed sale without a strict foreclosure as required under section 23 of the Illinois Mortgage and Foreclosure Act (Ill. Rev. Stat. 1971, ch. 95, par. 23); (2) the sum of $20,000 plus reasonable attorney's fees for the usurious and unlawful fee of $10,000 charged by Messick on the $80,000 loan in violation of section 5 of the interest statute (Ill. Rev. Stat. 1971, ch. 74, par. 5); and (3) other equitable relief that the court deemed appropriate.

Messick's answer to the complaint admitted the conveyance of properties to Fauber but denied that he did not have that right. It also stated that plaintiff's reservation in the "rider" did not create an equitable mortgage, that the loan was not usurious, that the property value of the eight parcels was considerably less than $324,000, that due to liens and other encumbrances, plaintiff's equity in the properties was only a few thousand dollars and that plaintiff was not in fact making any realistic effort to liquidate or borrow money on the properties.

Plaintiff's reply disputed the evaluation of the eight properties.

On October 2, 1972, the trial court denied plaintiff's motion for a temporary injunction and thereafter, on October 24, 1972, entered an order sustaining Messick's motion for judgment on the pleadings with regard to the relief sought in prayers (1) and (3) because plaintiff's complaint failed to state a cause of action for equitable relief. This appeal ensued. The allegation in prayer (2) that the loan was usurious and unlawful is still pending adjudication.

OPINION

The essence of plaintiff's position is that Messick's interest in the eight parcels of real estate is in the nature of an equitable mortgage and falls within the purview of section 23 of the Illinois Mortgage and Foreclosure Act (Ill. Rev. Stat. 1971, ch. 95, par. 23) which requires that:

> "No real estate within this state shall be sold by virtue of any power of sale, contained in any mortgage, trust deed or other conveyance in the nature of a mortgage, executed after the taking effect of this act; but all such mortgages, trust deeds or other conveyances in the nature of a mortgage, shall only be foreclosed, in the manner provided for foreclosing mortgages containing no power of sale; and no real estate shall be sold to satisfy any such mortgage, trust deed or other conveyance in the nature of a mortgage, except in pursuance of a judgment or decree of a court of competent jurisdiction."

Plaintiff relies on *DeVoigne v. Chicago Title and Trust Co.*, 304 Ill. 177, 136 N.E.2d 498, where owners of real estate for the purpose of inducing a contractor to proceed with the construction of a residence

on the premises, agreed to place title to the realty in a land trust as security against their default in payments due for the contractor's performance. When plaintiffs did in fact default on the payments, the contractor sought to sell the real estate. Plaintiffs filed suit to block the sale unless conducted pursuant to a judgment of a court of competent jurisdiction. In upholding plaintiff's claim, the court found that the disposition of the property was subject to the foreclosure act since the trust arrangement was conceived out of an attempt to evade the protection afforded by the statute, and because the agreement provided for the sale of the real estate property on default.

■■ The applicability of this statute was raised again in *Horney v. Hayes*, 11 Ill.2d 178, 183, 142 N.E.2d 94. In that case Horney was the owner of the beneficial interest in a land trust. He assigned his interest to Hayes as security for a loan and when the loan was not repaid, Hayes, proceeding under a power of sale conferred by the assignment, sold the beneficial interest to one Walsh. Thereafter, Horney brought suit to set aside the sale and certain subsequent conveyances alleging among other things that the transaction constituted a mortgage in equity in real estate. The Supreme Court held:

> "The contention that the sale of the certificate of beneficial interest was in violation of the statute concerning powers of sale in mortgages cannot be sustained * * *. It is evident from the terms of the statute that it applies only to sales of real estate * * *. It has been repeatedly held that beneficial interests under such trusts are personal property and not real estate. (*Sweesy v. Hoy*, 324 Ill. 319; *Duncanson v. Lill*, 322 Ill. 528; *Berning v. Berning*, 320 Ill.App. 686; *Chicago Title & Trust Co. v. Merchantile Bank*, 300 Ill.App. 329.) It follows that the sale of the certificate by Hayes, being a sale of personal property only, did not fall within the prohibitions of the statute relied upon."

In amplification and clarification of the *DeVoigne* holding the court said:

> "* * * The pledge in the case at bar is on an entirely different footing * * *. *It does not provide for sale of the real estate*, as in the *DeVoigne* case, nor was the trust itself created as security for a debt. The transaction between plaintiff and Hayes occurred subsequent to the creation of the trust, *and concerned only the beneficial interest represented by the certificate*." (Emphasis added.)

■■ Likewise here, we note, the collateral assignment in the instant case did not provide for the sale of real estate upon default but concerned itself only with Messick's right to sell what Kortenhof had the

right to pledge—the beneficial interest. Under such circumstances legal and equitable title remained in the trustee and Kortenhof did not—nor could he—pledge real estate as the security for the debt. (*Lawn Savings & Loan Ass'n v. Quinn*, 81 Ill.App.2d 304, 225 N.E.2d 683.) The fact that the "rider" to the assignment reserved the assignor the right to sell the real estate parcels as opposed to selling the beneficial intrest in those parcels is not determinative of Kortenhof's interest in the trust since the beneficiary's rights and powers are not determined by his own fiat but are fixed by the terms of the trust agreement. (*See Madigan v. Buehr*, 125 Ill.App.2d 8, 260 N.E.2d 431.) It therefore cannot be maintained that Messick's rights are affected by Kortenhof's description of his own powers. Clearly then plaintiff's reliance on *DeVoigne* is misplaced. Messick could have sold the beneficial interest in the land trust upon plaintiff's default provided he complied with the default provisions contained in the assignment.

Messick, however, acted without regard to his rights under the assignment. Eighteen days prior to the intended sale of the assigned beneficial interest, Messick directed the land trustee to convey title to the trust properties to Fauber purportedly to have him hold as Messick's nominee. This conveyance was not authorized under the collateral assignment.[2]

■■ An attempt is made to characterize Messick's conduct as mere preparation for the sale. It is argued that since Messick was seeking to convey eight properties and there was but one beneficial assignment covering these properties, he directed the transfer from the trustee to Fauber only out of an intent to expedite possible sales to more than one purchaser. If this is true, he acted unadvisedly. Illinois law permits the beneficiary to contract to sell real estate even though title is vested in the trustee. The beneficiary is entitled to the purchase price and, as title is held by the trustee, when the time for performance arrives, the deed will be executed by it. (*Burns v. Epstein*, 413 Ill. 476, 109 N.E.2d 774; *Schneider v. Pioneer Trust and Savings Bank*, 26 Ill.App.2d 463, 168 N.E.2d 808.) Therefore, it was not necessary for Messick to have title in order to sell the properties. As his beneficial interest was personalty, his disposition of individual parcels could have been handled through directions to the trustee at the appropriate time.

---

[2] The assignment provided:

"2. That in the event of the non-payment of principal or of interest on any of said indebtedness when due, whether by its terms or by acceleration, said Assignee may, upon giving ten days written notice to said Assignor, sell said Assignor's interest (beneficial interest) in said trust property, at public or private sale; and said Assignee may become the purchaser thereof; that as a result of such a sale, all of the said Assignor's right, title and interest in and

The question then remaining is the effect of the unauthorized conveyance out of the land trust and into the hands of Fauber. Plaintiff contends that Messick's interest in the eight parcels of real estate is at best in the nature of and constitutes an equitable mortgage thereby necessitating any intended sale to comply with section 23 of the Illinois Mortgage and Foreclosure Act (Ill. Rev. Stat. 1971, ch. 95, par. 23). The gist of plaintiff's argument is that the existence of a beneficial interest in a trust is predicated on the fact that title to the trust *res* is vested in a trustee and that since legal title here is no longer in the land trustee, the beneficial interest must have been extinguishd by the conveyance. It follows, plaintiff contends, that Messick's intended private sale will not be the sale of a personal property interest in a land trust but an equitable interest in real estate parcels and therefore subject to the foreclosure act. Plaintiff contends in the alternative that the entire debt is extinguished by Messick's conversion of the trustee's legal and equitable estate. For reasons that follow, we need not reach these contentions.

■■ It has been the policy of our courts to demand that persons dealing with trust property strictly observe the trust features. In *Schneider v. Pioneer Trust and Savings Bank*, 26 Ill.App.2d 463, 466, 168 N.E.2d 808, the following explanation was given for the necessity of observing the separation of the rights, powers and duties of persons dealing with the trust:

> "The land trust form of land ownership yields certain benefits to the beneficiaries, whether it be effective management, secret ownership, insulation from personal liability or some other advantage. These benefits result from the willingness, on the part of the courts of Illinois, to observe the form of the trust transaction. Reducing one's ownership to a beneficial interest brings about this result. Consistency requires, then, the observance by the beneficiary of the form of the trustee's ownership. Retaining the nature of his interest in order to be entitled to the advantages of a land trust, he may not then deal with the property as if no such trust existed * * *."

In *Madigan v. Buehr*, 125 Ill.App.2d 8, 16, 260 N.E.2d 431, it was observed:

> "There is a natural tendency to blend the power of the beneficiary with that of the trustee * * *. But the nature of the

---

to the beneficial interest of said property, including all power of direction and including Assignor's right of redemption, if any, shall cease and terminate; and that said Assignors agree that any expense of such a sale shall become an additional indebtedness due the said Assignee."

land trust is such that, if the trust is to be preserved, the powers of the beneficiary and the trustee must be kept distinct."

The beneficiary of a land trust cannot then deal with the property as if no trust existed. (*Madigan v. Buehr*, 125 Ill.App.2d 8, 260 N.E.2d 431.) In his contractual relations with others, the beneficiary must deal with the land as beneficiary. When he acts contrary to the provisions of the trust agreement, the contract is not enforceable. (*See Feinberg v. Great Atlantic & Pacific Tea Co.*, 131 Ill.App.2d 1087, 266 N.E.2d 401.) We think it plain that beneficiary's assignee, in this case Messick, would likewise be constrained in his dealings with the trust properties. The powers of the beneficiary's assignee here, however, were not kept distinct from those of the land trustee.

The basic powers and rights of the trustee as set forth by the trust agreement were modified in the instant case by the assignment of beneficial interest in the trust property. Under the specific terms of the collateral assignment that had been filed with the trustee, the assignee's power of sale was limited to only a personal property interest in the trust. The power of the land trustee thereunder was to convey legal title upon the direction of the beneficiary's assignee provided that the assignor defaulted on the loan, that ten-day notice of any proposed disposition of the collateral was given to the assignor and that this disposition met any other conditions set forth by the agreement entered into between Messick and Kortenhof. The conveyance of legal title to Fauber was contrary to the terms of this assignment and, as such, constituted a violation of the trust agreement, albeit inadvertent, by the trustee. It must therefore be set aside (*Lehnard v. Specht*, 180 Ill. 208, 54 N.E. 315; *Savit v. Chicago Title and Trust Co.*, 329 Ill.App. 277, 68 N.E.2d 472; Restatement (Second) of Trusts, sec. 288 (1959)) to allow the trustee to reclaim his interest in the trust *res*. (*Ludington v. Mercantile National Bank of City of New York*, 92 N.Y.S. 454, 102 App.Div. 251, 74 N.E. 1119; *see generally* Bogert Trusts & Trustees § 861 (2nd ed. 1962).) The effect of avoiding the unauthorized conveyance is to return this default proceeding to the status that existed prior to May 5, 1972, when Messick directed the land trustee to convey title to Fauber.

Liberally construing plaintiff's prayer for relief, we believe he has stated a good cause of action for setting aside National Boulevard Bank's transfer of title to Fauber. Accordingly, the judgment of the circuit court dismissing that portion of plaintiff's complaint is reversed and the cause remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

SULLIVAN, P. J., and DRUCKER, J., concur.