# Illinois Official Reports

## Appellate Court

---

### *Campbell v. Campbell*, 2017 IL App (3d) 160619

---

| | |
|---|---|
| Appellate Court Caption | RUSSELL B. CAMPBELL, BARBARA A. DETERMAN, and GREG E. CAMPBELL, as Trustees of the Clyde E. Campbell Declaration Trust Dated March 29, 1999, as Amended and Restated, Plaintiffs, v. RUSSELL B. CAMPBELL and GREG E. CAMPBELL, Defendants (Russell B. Campbell, Defendant and Cross-Defendant-Appellant; Greg E. Campbell, Defendant and Cross-Plaintiff-Appellee). |
| District & No. | Third District<br>Docket No. 3-16-0619 |
| Filed<br>Rehearing denied | September 14, 2017<br>October 17, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Warren County, No. 14-MR-68; the Hon. Heidi A. Benson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Richard L. Whitman, of Whitman & Baber, of Monmouth, for appellant.<br><br>Timothy D. Roberts, of Anderson, Roberts, Porth, Wallace & Stewart, LLP, of Burlington, Iowa, for appellee. |

Panel                    JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Schmidt concurred in the judgment and opinion.
Justice O'Brien specially concurred, with opinion.

## OPINION

¶ 1        Plaintiffs, as trustees of the Clyde E. Campbell Declaration of Trust, brought a declaratory judgment action against two of its beneficiaries, Russell B. Campbell and Greg E. Campbell, seeking to have the trial court determine which of the two beneficiaries was entitled to certain current or former trust property. During pretrial proceedings, the two beneficiaries filed cross-motions for partial summary judgment. After a hearing, the trial court granted Greg's motion for partial summary judgment and denied Russell's motion. Russell appeals. We affirm the trial court's ruling.

¶ 2                                      FACTS

¶ 3        The dispute in this case involves the estate plan of Clyde Campbell. Clyde was married to Helen Campbell and had three children: Barbara Determan, Greg Campbell, and Russell Campbell. In 1999, as part of his estate plan, Clyde executed a declaration of trust, which established the instant living trust (Clyde's trust or the trust). Clyde also executed a will and other documents to form a land trust (farm trust) and a limited liability company (LLC).[1] The farm trust was owned equally by Clyde's trust, Helen's trust (a trust that was established by Clyde's wife), and Greg. Each owned a one-third interest. The LLC was owned in the same manner.

¶ 4        In February 2012, Clyde amended and restated the declaration of trust (amended declaration). Of relevance to this appeal, the amended declaration provided that (1) Clyde was the trustee of the trust; (2) as long as he was acting as the trustee, Clyde had the power to withdraw any part or all of the net income and principal of the trust; (3) Clyde could make gifts of "trust property" to such persons and entities and subject to such terms and conditions as Clyde deemed appropriate; and (4) upon Clyde's death, any interest that Clyde's trust owned in the farm trust and the LLC was to be distributed to Helen first (either directly or in trust) and then to Greg, if Helen died before Clyde or if Helen disclaimed her interest.

¶ 5        In April 2012, while Clyde was residing in a retirement community but still serving as the trustee of his own trust, Russell's attorney drafted two assignments at Russell's direction, which purported to transfer the interest of Clyde's trust in the farm trust and the LLC to Russell. A secretary or assistant for Russell's attorney took the assignments to Clyde at the retirement community, and Clyde signed the assignments in his own name individually. Clyde did not sign the assignments in his capacity as the trustee of his trust. The assignments specifically stated that they were to be effective upon Clyde's death, and the secretary was the

---

[1]It is impossible to tell with certainty from the record before us whether the land trust in this case was a common law land trust or an Illinois land trust. Therefore, to avoid confusion, we will refer to the land trust simply as the "farm trust." See *IMM Acceptance Corp. v. First National Bank & Trust Co. of Evanston*, 148 Ill. App. 3d 949, 954 (1986) (explaining the difference between the two types of trusts).

only person who witnessed the assignments. Clyde passed away in July 2012, and his will was subsequently admitted to probate.

¶ 6    After Clyde's death, a dispute arose as to whether Clyde's trust or Russell owned the one-third interests in the farm trust and the LLC that was the subject of the assignments. If Clyde's trust was the owner, pursuant to the terms of that trust, the one-third interests would pass to Greg upon Clyde's death. If Clyde's trust did not own the one-third interests, the interests would not pass to Greg, and Russell would remain the owner pursuant to the assignments.

¶ 7    In September 2014, plaintiffs filed the instant declaratory judgment action seeking to have the trial court determine whether Clyde's trust (and, ultimately, Greg) or Russell owned the one-third interests in the farm trust and the LLC. The complaint was later amended, and both Russell and Greg were named as defendants. Russell and Greg both filed answers to the complaint. In his answer, Greg asserted, among other things, that Clyde lacked the mental capacity to make the assignments and that the assignments were the product of undue influence on the part of Russell. In addition to an answer, Greg also filed a cross-claim.

¶ 8    In November 2015, Russell and Greg both filed cross-motions for partial summary judgment. Russell argued in his motion that the assignments were valid and that he was the rightful owner of the one-third interests in the farm trust and the LLC. Greg argued that the assignments were void, that Clyde's trust was the rightful owner of the one-third interests, and that pursuant to the terms of Clyde's trust, those interests passed to Greg upon Clyde's death.

¶ 9    In December 2015, a hearing was held on the cross-motions for partial summary judgment. By the time of the hearing, the matters at issue before the trial court had been fully briefed by the parties, and the trial court had before it as part of the pleadings or supporting documents the amended declaration of trust, a portion of Clyde's will, the two assignments, two certificates showing the interest of Clyde's trust in the farm trust and the LLC, a portion of the operating agreement for the LLC, and some deposition transcripts. Of relevance to this appeal, the certificates for both the farm trust and the LLC provided that a transfer of the interest in either of the two entities could be made on the books of that entity by surrendering the properly endorsed certificate for that entity. In addition, the farm trust certificate and the LLC's operating agreement both provided a right of first refusal to the other beneficiaries or members before a transfer of an interest in that particular entity could be made. At the hearing, the trial court listened to the arguments of the attorneys and then took the case under advisement.

¶ 10    The trial court later issued a ruling by letter, granting Greg's motion for partial summary judgment and denying Russell's motion. In the letter ruling, the trial court found that (1) the assignments were invalid as *inter vivos* gifts because there was no present delivery or transfer since the assignments were not to take effect until Clyde's death and Clyde had not issued a certificate for the one-third interest in the farm trust to Russell; (2) even if the assignments were properly delivered gifts, those gifts were void (at least as to the farm trust interest) because the transfer did not comply with the requirements contained in the farm trust certificate (the right of first refusal); (3) the assignments were also invalid as testamentary transfers because the assignments had not been witnessed by two witnesses as required by statute (see 755 ILCS 5/4-3 (West 2012)); (4) the fact that there was an amended declaration of trust that gave Clyde the power to make gifts did not change the outcome of this case because the power to make gifts of trust property was different from the power to make gifts of trust shares and Clyde could not make gifts of trust shares that he did not own; (5) the purported

assignment made no mention that Clyde was attempting to make the transfer in his capacity as trustee of his trust; and (6) the assignment of the LLC interest was void because the LLC never came into existence since the members of the LLC had never signed the operating agreement. In addition, in setting forth the factual history of this case, the trial court made a statement (statement of factual history) that Clyde had invited his children's input into his estate plan and had engaged the services of a mediator to assist in working out the details of that plan in a vain attempt to promote family unity after his death.

¶ 11    After the trial court's ruling, Russell promptly filed a motion to reconsider (titled as a motion to vacate) and challenged all or most of the findings that the trial court had made in its letter ruling and the statement that the trial court had made about the factual history of the case. Greg filed a response and opposed the motion to reconsider. Following a hearing, the trial court denied the motion. In so doing, the trial court stated, among other things, that (1) it was not changing any of its previous findings of fact but was expanding upon some of those findings and upon some of its prior reasoning; (2) while Clyde was a beneficiary, he was also subject to the restrictions in the instruments he was signing; (3) the attempted assignment was an ineffective attempt at an *inter vivos* transfer, which made the assignment a testamentary disposition under Illinois law; (4) although the LLC was in existence, a point upon which the trial court revised its previous conclusion, the court would not enforce the unsigned operating agreement of the LLC at the summary judgment stage; and (5) the court would not strike the statement that it had made about the factual history of the case, despite Russell's complaint about that statement.

¶ 12    A written order was later entered documenting the trial court's ruling on the motion to reconsider. In the written order, the trial court made an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding that the order was final and appealable. Following the entry of the order, Russell appealed.

¶ 13                                    ANALYSIS

¶ 14    On appeal, Russell argues that the trial court erred in granting partial summary judgment for Greg on the declaratory judgment complaint and in denying Russell's motion for the same relief. Russell asserts that partial summary judgment should have been granted in his favor, instead of Greg's, because the assignments were valid and were sufficient for Clyde, acting in his capacity as a beneficiary of his own trust, to transfer the one-third interests in the farm trust and the LLC to Russell. In support of that assertion, Russell contends that (1) the amended declaration of trust gave Clyde the unfettered right to make gifts of the trust property in his individual capacity, a right that Clyde properly exercised when he made the gift to Russell in the two assignments; (2) pursuant to the terms of Clyde's trust, Clyde had the legal authority to give away the one-third interests in the farm trust and the LLC, not just the authority to give away specific items of property, as the trial court incorrectly indicated in its order; (3) the assignments were proper as present gifts of future interests because physical delivery of the assignments had been made and were not testamentary transfers as the trial court incorrectly found; (4) recording the assignments on the books of the farm trust or the LLC was not required to complete delivery of the two assignments; (5) there was no right of first refusal as to the farm trust interest because that right, as contained in the farm trust document, did not apply to gifts, such as the current assignment; (6) the fact that the certificate for the farm trust was never endorsed or surrendered would also not invalidate the gift made by Clyde in the

assignment for the same reason—because a gift was involved and any such requirement did not apply to gifts; (7) the LLC was legally brought into existence by the filing of the articles of organization with the State, despite the members' failure to sign the operating agreement, and the trial court's conclusion to the contrary was in error; (8) although the LLC had valid legal existence, there was no right of first refusal as to the LLC interest because the operating agreement for the LLC, which would have given rise to such a right, was never signed and no requirement for first refusal existed under the applicable statute; and (9) the trial court's statement of factual history was made in error and, if this case is reversed and remanded, should be stricken. For all of the reasons stated, Russell asks that we vacate the trial court's ruling, enter partial summary judgment in his favor, and remand the case for further proceedings on Greg's claims of lack of mental competency and undue influence with the disputed statement of factual history stricken.

¶ 15    Greg argues that the trial court's ruling was proper and should be upheld. In response to Russell's specific contentions, Greg maintains that (1) although Clyde had the legal authority to make gifts of the one-third interests in the farm trust and the LLC, for those gifts to be valid, he had to make the assignments in his capacity as the trustee of his own trust, not in his individual capacity, and he was subject to the limitations contained in the farm trust agreement and the LLC's operating agreement when doing so; (2) although a present gift of a future interest could theoretically be made by physical delivery of a written assignment of the donor's interest in the property gifted, such a gift was not accomplished here by Clyde because, as the trial court correctly found, the delivery of the assignments was not effective; (3) because the assignments were to take effect upon Clyde's death and were not intended by Clyde to pass title immediately, the assignments were testamentary dispositions, as the trial court correctly found, and were invalid since they failed to comply with the requirements for such dispositions under the law (see 755 ILCS 5/4-3 (West 2012) (requiring the signatures of two witnesses for a valid will)); (4) the delivery of the assignments to Russell's attorney, alone, was not legally sufficient to convey the one-third interests in the farm trust and the LLC from Clyde's trust to Russell, but rather, the recording of the assignments on the books of the farm trust and the LLC was necessary to complete the delivery of the gifts; (5) the fact that the farm trust certificate was not endorsed or surrendered and that the assignments were not recorded on the books of the farm trust or the LLC was further evidence that there was no present delivery by Clyde (that Clyde did not intend to make a present transfer of a future interest with the two assignments); (6) the right of first refusal contained in the farm trust agreement referred to "transfers" and, thus, contrary to Russell's contention and misreading of the trust language, also applied to gifts; (7) as Russell correctly states, the LLC was properly formed and had full legal effect; (8) the LLC's operating agreement was also in effect because the members of the LLC had a meeting of the minds as to the conditions contained in the operating agreement and treated the operating agreement as being in effect, even though the members had failed to sign the operating agreement; (9) the assignment of the LLC interest was invalid because it did not comply with the requirements of the operating agreement (had to give notice and the right of first refusal to the other members of the LLC); and (10) the trial court's statement of factual history was properly made and, in the event of a reversal and a remand, should not be stricken. For all of the reasons set forth, Greg asks that we affirm the trial court's grant of partial summary judgment in his favor.

¶ 16    The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* In appeals from summary judgment rulings, the standard of review is *de novo*. *Id.* When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of summary judgment may be affirmed on any basis supported by the record. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 17    In a conventional trust, the trustee holds the legal title to the property and the beneficiary holds the equitable title. Restatement (Third) of Trusts § 2 cmt. d (2003); *Espevik v. Kaye*, 277 Ill. App. 3d 689, 694 (1996). That same rule applies to a common law land trust. *IMM Acceptance Corp.*, 148 Ill. App. 3d at 954. A different rule, however, applies to a special type of land trust known as an "Illinois land trust." See *id.* Unlike a conventional trust and a common law land trust, in an Illinois land trust, the trustee holds both the legal and equitable title to the property. See *id.*

¶ 18    Courts will generally demand that a person dealing with trust property strictly observe the trust features. See Restatement (Third) of Trusts, pt. 4, ch. 11, intro. note (2003) (noting that the voluntary or involuntary transfer of a beneficiary's interest in a trust does not refer to a transfer of the trust property itself because the beneficiary cannot assign more than the beneficiary has); Restatement (Third) of Trusts § 51 cmt. b (2003) (stating that a purported transfer of an interest that a beneficiary does not have is an ineffective transfer); *Kortenhof v. Messick*, 18 Ill. App. 3d 1, 7 (1974) (determining the validity of certain transfers in the context of an Illinois land trust). In other words, a trustee or beneficiary of a trust cannot make transfers of or relating to trust property as if the trust did not exist. See Restatement (Third) of Trusts, pt. 4, ch. 11, intro. note (2003); Restatement (Third) of Trusts § 51 cmt. b (2003); *Kortenhof*, 18 Ill. App. 3d at 8. The rationale for that rule is based upon consistency and the principle that a person who receives the benefits of the trust format (having property held in trust) should be required to observe that format in his or her dealings with the trust property. See *Kortenhof*, 18 Ill. App. 3d at 7-8 (stating that rationale in the context of an Illinois land trust). Although that rule and rationale have generally been stated with regard to Illinois land trusts, we believe that they would apply equally as well to a conventional trust and to a common law land trust. See Restatement (Third) of Trusts, pt. 4, ch. 11, intro. note (2003); Restatement (Third) of Trusts § 51 cmt. b (2003); *Kortenhof*, 18 Ill. App. 3d at 7-8. Therefore, when the legal title to property is held by a person in his capacity as trustee of a trust, to transfer that legal title to another person or entity, the trustee must execute the transferring document in his capacity as the trustee of the trust and not in his individual capacity. See Restatement (Third) of Trusts, pt. 4, ch. 11, intro. note (2003); Restatement (Third) of Trusts § 51 cmt. b (2003); *Kortenhof*, 18 Ill.

App. 3d at 7-8. The failure to do so by the trustee would make the trustee's attempt to transfer legal title an invalid or ineffective transfer. See Restatement (Third) of Trusts, pt. 4, ch. 11, intro. note (2003); Restatement (Third) of Trusts § 51 cmt. b (2003); *Kortenhof*, 18 Ill. App. 3d at 7-8.

¶ 19    In the present case, after having considered the above legal principles and having reviewed the record, we find that partial summary judgment was properly granted for Greg. Although the parties have made numerous assertions in support of their respective positions on appeal, the simple fact is that at the time of the assignment, Clyde in his capacity as trustee of his trust—and not Clyde individually—was the holder of the legal title to the one-third interests in the farm trust and the LLC. Clyde, in his individual capacity, therefore, had no ability to assign the legal title to the farm trust and the LLC to Russell, only Clyde acting in his capacity as the trustee of the trust could do that. See Restatement (Third) of Trusts, pt. 4, ch. 11, intro. note (2003); Restatement (Third) of Trusts § 51 cmt. b (2003); *Kortenhof*, 18 Ill. App. 3d at 7-8. There was nothing before the trial court or in the record on appeal in this case to support that such a transfer had been made by Clyde as the trustee of his trust. The trial court, therefore, properly determined that the two assignments were invalid or ineffective; that Clyde's trust was the owner of the one-third interests in the farm trust and the LLC; and that the interests were to pass to Greg, upon Clyde's death, pursuant to the terms of Clyde's trust.

¶ 20    Having reached that conclusion, we must take a moment to comment upon Russell's contention that under Illinois law, Clyde could validly assign his beneficial interest in his trust to Russell. We agree that Russell's contention in that regard is well established in the law. See Restatement (Third) of Trusts § 51 cmt. b (2003) (recognizing that a beneficiary of a trust can voluntarily transfer during his life the whole or part of his beneficial interest in the trust); *Victor v. Hillebrecht*, 405 Ill. 264, 269 (1950) (stating that there is no rule in law or equity that would prevent a beneficiary of a trust, who is not under any incapacity, from disposing of his interest in the trust estate for consideration); *St. Charles Savings & Loan Ass'n v. Estate of Sundberg*, 150 Ill. App. 3d 100, 104-05 (1986) (applying the rule that a trust beneficiary may assign or transfer his beneficial interest in the context of an Illinois land trust). What Russell fails to recognize, though, is that a beneficiary of a trust, acting in his capacity as a beneficiary, can only transfer the interest in the trust that he or she actually holds—the beneficial or equitable interest. See Restatement (Third) of Trusts § 51 cmt. b (2003) (recognizing that the purported transfer of an interest that the beneficiary does not have is an ineffective transfer). A beneficiary cannot transfer legal title to property held in trust because the beneficiary does not hold that interest; only the trustee holds that interest. See Restatement (Third) of Trusts, pt. 4, ch. 11, intro. note (2003); Restatement (Third) of Trusts § 51 cmt. b (2003); *Kortenhof*, 18 Ill. App. 3d at 7-8.

¶ 21    Having found that the two assignments were invalid because they were not executed by Clyde in his capacity as the trustee of his own trust, we need not determine whether the assignments were also invalid because they failed to comply with the right of first refusal or because they did not comply with the statutory requirements for testamentary dispositions.

¶ 22                                   CONCLUSION
¶ 23    For the foregoing reasons, we affirm the judgment of the circuit court of Warren County.

¶ 24    Affirmed.

¶ 25    JUSTICE O'BRIEN, specially concurring.

¶ 26    I write separately because I agree with the disposition but not the entire rationale set out in the majority. Unlike the majority, I believe the Campbell Farms land trust was an Illinois land trust, and as such, Clyde E. Campbell, in his capacity as the beneficiary of that land trust, had the power to dispose of the trust property. See *First National Bank of Barrington v. Oldenburg*, 101 Ill. App. 3d 283, 287 (1981). However, Campbell's power to dispose of the trust property in his capacity as beneficiary was limited as set forth by the majority. Since those limitations apply in this case regardless of whether the trust was a conventional trust or a land trust, I concur in the remainder of the opinion.